The Planters' and Miners' Bank *vs*. The Willeo Cotton Mills.

The Willeo Cotton Mills *vs*. The Planters' and Miners' Bank.

1. Where a debtor in failing circumstances, has all his visible property on which he obtained the credit, incorporated under a manufacturing charter, and divided into shares between his father and himself, and afterwards makes over to his wife his shares so set apart to him, the father having paid debts of the son to himself and other creditors for his shares of the stock, the transaction may be obnoxious to section 1952 of the Code as made to delay or defraud creditors ; and whether made with such intent or not, and whether such intent was known to the father, or he had grounds for reasonable suspicion of such intent, or the transaction was for a valuable consideration and *bona fide*, and without such notice or grounds of suspicion, is a question for the jury on all the facts and circumstances of the case, and if fairly passed upon by the jury, the verdict should stand.
2. The corporation, however, has the right to test the question in court, and if the verdict be for damages because the claim was interposed for delay only, and the presiding judge grants a new trial, this court will not control his discretion in granting the same, because it may have been predicated upon his dissatisfaction with such damages, unless the plaintiff shall write off the damages.

The judgment is therefore reversed, and the verdict of the jury will

stand, if the plaintiff shall write off the damages assessed by the jury—if not, the judgment granting the new trial will be affirmed.

Fraud. Corporations. Claim. Damages. New trial. Before Judge HILLYER. Cobb Superior Court. March Adjourned Term, 1877.

To the November term, 1875, of Cobb superior court, the bank brought complaint against W. A. Hansell, principal, and E. E. Field, indorser, on a draft for $2,300.00, signed by " Willeo Cotton Mills, W. A. Hansell, proprietor." On March 14, 1876, plaintiff recovered judgment; execution issued and was levied on certain property as belonging to Hansell, which was claimed by the Willeo Cotton Mills. On the trial the evidence was, in brief, as follows:

W. A. Hansell purchased land and built the mills in 1873; he controlled them as proprietor until the fall of 1874. Becoming involved in debt, he applied to his father, A. J. Hansell, to purchase a half interest for $12,500; this the latter agreed to do, but it was determined that they should first become incorporated, a deed to the property be made to the company, and certificates of stock to the amount of his half interest issued to A. J. Hansell. They obtained a charter in February, 1875, the deed was made August 23, 1875, and the certificates issued October 29, 1875, signed by " W. A. Hansell, agent, A. J. Hansell, president." In consideration of this, A. J. Hansell was to settle certain debts to himself and others outstanding against W. A. Hansell in connection with the mill property; he has settled the larger portion of these debts, and obtained an extension of time on the largest claim still remaining; he intends settling the balance as soon as possible. He testified that though he knew of some debts of W. A. Hansell at the time of the purchase, it was not done to defraud or injure any one. On October 29, 1875, W. A. Hansell transferred all his stock to his wife, and he has now no visible property.

Field, the payee and indorser of the draft, testified that he

sold W. A. Hansell cotton for cash, but afterwards agreed to give him time, and took the draft sued on; that "having had assurances from W. A. Hansell at the time he purchased the cotton that he was owner of the Willeo Cotton Mills, and believing that he still owned the property," he (Field) took the draft unsecured. Letters, ranging in date from August, 1874, to March, 1875, from both the Hansells to Field were introduced in evidence; they were in reference to an adjustment of his claim; some were written on paper with the printed heading, "Office of the Willeo Cotton Mills, W. A. Hansell, proprietor; Roswell, Ga."

The jury found the property subject with 10 per cent. damages per annum from date of judgment. Claimant moved for a new trial: Upon this the court passed substantially the following order:

That claimant, within fifteen days from this date (5th October, 1877), file in the office of the clerk of the superior court of Cobb county, a bond with good and sufficient security or securities, to be judged of by said clerk and approved by him, in the sum of $5,000.00, payable to plaintiff in *fi. fa.*, or party controlling the judgment, conditioned to have the shares in the Willeo Cotton Mills corporation that were first entered at organization of the same, or apportioned to W. A. Hansell, defendant in *fi. fa.*, forthcoming, when called for by the sheriff or his deputy, to be levied on under the said *fi. fa.*, should such plaintiff or party controlling hereafter desire to pursue the same. Upon compliance of claimant, a new trial is granted; otherwise, refused.

Plaintiff thereupon excepted. Claimant also excepted because of the bond required. The cases were argued together.

W. M. SESSIONS; A. JOHNSON; M. H. FIELD, for plaintiff in error in the first case, and defendant in the second.

CANDLER & THOMSON, contra.

JACKSON, Judge.

From a careful examination of the facts of this case as set out in the record, we are of the opinion that the verdict of the jury is sustained sufficiently by the evidence to require that it should stand in so far as it finds the property subject.

From the qualified and conditional grant of a new trial by the superior court, it appears that the presiding judge did not differ with the jury in the conclusion that this debt ought to be paid out of this property, as the order of the judge was evidently an effort to secure enough of it to be forthcoming to meet the demands of the judgment creditor. The case, therefore, is not within the rule that this court will reluctantly interfere with the first grant of a new trial where the presiding judge is not satisfied with the verdict, but differs from the jury on the evidence, for it seems that the judge, as well as the jury, thought that this property ought to pay this debt. We think so too. The creditor gave to the debtor credit on the faith of this property, and afterwards he was put off from time to time by the debtor; and then the property was converted into a manufacturing company's estate for which a charter was obtained by the debtor and his father—the father being the other member of the corporation, and having recognized the debt and made propositions himself to pay it.

The son made over to his wife his part of the estate and left nothing for this creditor. The father paid for his portion in debts the son owed him and other creditors—leaving nothing to pay this debt after promises to pay it by one of the company, and negotiations looking to its payment by the other.

Section 1952 of our Code is very strong in regard to sales by insolvent persons or persons in involved circumstances. The second paragraph annuls every conveyance of any property made with intent *to delay* creditors—if the party taking knows that intent.

Whether this was a transaction and transfer of this estate

*to delay* this creditor—to put the question in its mildest form—was for the jury to say; and whether that intent was known to the party taking was also for that body to find. They have so found after the case was fairly put to them by the court under the law, and their verdict should stand— unless some legal reason can be given for setting it aside. This record discloses none to us.

The high character of the parties impresses us with the conviction that the intent was eventually to pay the debt; but certainly the jury might well think that it was done *to delay its payment.* The entire proceedings look that way.

Of course, if it had been all *bona fide* and for value, the transaction ought to have stood, as the same paragraph provides; but any notice that it was done to delay other creditors, or grounds for reasonable suspicion that *such delay* was the object, would annul it by the very same paragraph of the same section of the Code. All these were matters peculiarly for the jury.

2. But we do not think that the facts make a case where *the claim* was put in for *delay only.* The parties had a right to test the legality of their conduct—to have their neighbors say whether the transaction was fair and *bona fide*, and a court to pronounce upon its legal effect. Their object, it seems, from the evidence, was to test these points, and not by a claim affidavit, *merely and solely*, to delay this *fi. fa.* Therefore we think the verdict of ten per cent. damages wrong. And, perhaps, this view induced the court below to set it aside. If so, we think it did right in setting aside that part of the verdict.

3. Wherefore it is our judgment, that the judgment be reversed if the party plaintiff will write off the damages, and, in that event, that the remainder of the verdict stand; but if the plaintiff will not write off the damages, then that the judgment granting the new trial be affirmed.

Judgment reversed on terms.